*Hartford,*
June, 1844.

Pitkin
*v.*
Spencer.

## PITKIN *against* SPENCER and others :

### IN ERROR.

*A* assigned to *B*, *C* and others, his creditors, certain contracts with third persons, with full power to collect such claims, and apply the avails, after deducting the incidental expenses of collection, in payment of the respective claims by them severally held against the assignor, whether by assignment or otherwise, in proportion to their respective amounts. The claims so assigned were put into the hands of *B* for collection ; and he collected on one of them, 1195 dollars, but could obtain nothing on the others. Besides the claim which *B* had, in his own right, against *A*, he held two notes given by *A* to *Y* and *Z*, secured by mortgages on *A's* lands. *B* afterwards obtained from *A* a mortgage covering the same lands, to secure the debt originally due to him. He then purchased of *A* his equity of redemption in the mortgaged lands, and thereby became the owner of those lands ; which he subsequently sold, and from the avails, with the dividends received under a general assignment by *A* for the benefit of his creditors, realized enough to pay said two notes, the amount paid *A* for the equity of redemption, and all expenses attending the transaction of the business. On a bill in chancery brought by *C* and others against *B*, for their shares of the money collected by *B*, it was held, that *B* was not entitled to retain anything on account of said two notes. [Two judges dissenting.]

THIS was a bill in chancery, brought by *Joseph Spencer* and others against *Horace Pitkin*, to obtain from the defendant the sums to which they were respectively entitled out of a certain fund in his hands.

On the 13th of *May*, 1840, *George Olmsted* assigned to the defendant and the plaintiffs two contracts in relation to the purchase of mulberry trees, one executed by Rev. *C. J. Tenney*, dated *July* 10th, 1839, and the other by *John Hall*, Esq., dated *July* 2d, 1839 ; also a note made by *J. A. Joy*, for 147 dollars, dated *May* 5th, 1839 ; with full power to collect said claims, and apply the avails, after deducting the incidental expenses of collection, in payment of the respective claims by them severally held against the assignor, whether by assignment or otherwise, in proportion to their respective amounts. The claims so assigned were put into the hands of the defendant for collection ; and he collected on the contract executed by *Hall*, 1195 dollars, 88 cents, over and above the incidental expenses of collection ; but on the other contract and the note, he was not able to collect, and has not received any thing.

*Hartford,*
June, 1844.

Pitkin
*v.*
Spencer.

At the time of the assignment, the defendant and the plaintiffs respectively held the following claims, in their own right, against *Olmsted*, viz. *Joseph Spencer*, 1005 dollars, 41 cents; *Henry Birge*, 292 dollars, 69 cents; *Francis Birge*, 189 dollars, 8 cents; *William Robertson*, 116 dollars, 41 cents; *Jason Sage*, 442 dollars, 51 cents; *James R. Belden*, 463 dollars, 28 cents; *John H. Buel*, 117 dollars, 81 cents; *Horace Pitkin*, [the defendant,] 1020 dollars, 74 cents. With regard to these claims there was no controversy.

The defendant also claimed to be the owner by assignment of two notes against *Olmsted*, one for 2632 dollars, 99 cents, payable to *Elisha Sage*, and the other for 218 dollars, 50 cents, payable to *Evelyn Pitkin;* on which, he insisted, that he was entitled to a dividend from the sum collected, of the same proportionate amount as on his other claim. The facts upon which this claim was founded, are the following.

On the 19th of *September*, 1839, *Olmsted* mortgaged certain lands to *Sage* and *Evelyn Pitkin,* and to other persons, to secure the two last-mentioned notes, and certain debts due to the other mortgagees. On the same day, *Olmsted* assigned his personal estate and certain real estate, not including the real estate mortgaged as aforesaid, to a trustee for the benefit of all his creditors, pursuant to the statute of 1828. Under that assignment the two notes payable to *Sage* and *Evelyn Pitkin* were presented, with the other claims above-mentioned, to the commissioners, by whom they were allowed, and a dividend of 18 cents, 4 mills, on the dollar, was declared. On the 1st of *October*, 1839, *Olmsted* conveyed to the defendant his interest in the lands mortgaged as aforesaid, by a deed absolute in its terms, but intended merely as security for the defendant's debt of 1020 dollars, 74 cents. *Sage*, regarding such release as void against creditors, subsequently attached the same lands, as the property of *Olmsted*, intending thereby to obtain additional security for his debt of 2632 dollars, 99 cents. On the 14th of *February*, 1840, *Olmsted* executed to the defendant a mortgage deed of the lands so released and attached, to secure the payment of said debt of 1020 dollars, 74 cents. These lands being thus incumbered, the defendant, for the purpose of extricating them from their embarrassed condition, and rendering them more available to the interests of all concerned, and with the intent and expectation of deri-

ving therefrom satisfaction, or part satisfaction, of his debt of 1020 dollars, 74 cents, procured a certain arrangement (*a*) to be made, the result of which was, that the defendant, having purchased of *Olmsted*, his equity of redemption in the lands mortgaged for the security of the *Sage* and *Evelyn Pitkin* notes, became the owner of such lands; which he subsequently sold, and from the avails realized enough, with the dividends received from the trustee, to pay those notes, together with the amount paid *Olmsted* for the equity of redemption, and all expenses attending the transaction of the business.

The superior court decided, that the defendant was not entitled to retain any part of the moneys collected by him as aforesaid, on account of the *Sage* and *Evelyn Pitkin* notes; and passed a decree accordingly. The defendant thereupon filed his motion in error, and brought the record before this court for revision.

*Hungerford*, for the plaintiff in error, contended, That the notes assigned to him by *Sage* and *Evelyn Pitkin*, were not extinguished; and that he is entitled to retain of the moneys remaining in his hands, a *pro rata* share, on account of those notes. *Russell* v. *Austin*, 1 *Paige*, 192. *Burnet* v. *Denniston*, 5 *Johns. Ch. R.* 35. *Mills* v. *Comstock, Id.* 214. *James* v. *Johnson*, 6 *Johns. Ch. R.* 417. *Gardner*, admr. v. *Astor*, 3 *Johns. Ch. R.* 53. *Norton* v. *Plumb*, 14 *Conn. R.* 512.

*T. C. Perkins*, for the defendants in error, contended, 1. That all the parties being creditors of *Olmsted*, and joined in the same assignment, stand on equal ground.

2. That the plaintiff in error has no special equity growing out of the fact of his being in possession of the funds. He received them only as agent or trustee of the creditors.

3. That the notes in question were both paid and cancelled out of *Olmsted's* funds.

4. That consequently, the plaintiff in error is not entitled to receive any thing on account of those notes.

(*a*) The details of this arrangement, which are somewhat complex, are omitted, to avoid prolixity.

*Hartford,*
*June,* 1844.

Pitkin
*v.*
Spencer.

WAITE, J.   From the report of the committee in this case, it appears, that *George Olmsted*, on the 13th of *May,* 1840, assigned to the parties in this suit, two certain contracts, and a certain note, "with full power to collect said claims, and apply the avails, after deducting the incidental expenses of collection, in payment of the respective claims by them severally held against him, whether by assignment or otherwise, in proportion to their respective amounts."

The claims thus assigned were placed in the hands of the defendant for collection ; and he has received upon one of them the sum of 1195 dollars, 88 cents, over and above the incidental expenses, and nothing upon the others.

The object of the plaintiffs' bill, is, to determine in what manner this sum shall be divided among the parties.   The assignment has prescribed the rule.   It is to be divided among them, in proportion to their respective claims against the assignor, at the time of the assignment.

The committee has found, that *Olmsted* was indebted to the parties in their own right, in certain specified sums.   The division is, therefore, to be made according to the debts thus found, unless it appears from further facts specifically detailed in the report, that the defendant is entitled to a greater share. This he claims.   And he contends, that at the time of the assignment, he was the owner of two notes against *Olmsted*, which had been assigned to him, one for 2632 dollars, 99 cents, payable to *Elisha Sage,* and the other for 218 dollars, 50 cents, payable to *Evelyn Pitkin.*

The committee, instead of finding directly, whether *Olmsted* was indebted to the defendant on account of those notes, as he had a right to do, has thought proper to report the facts upon which the defendant founded his claim, that the court might draw the inference as to such indebtedness.

From these facts, it appears, that those notes were secured, by mortgages upon certain lands of *Olmsted's ;* and that the defendant afterwards procured a mortgage covering the same lands, to secure his own debt.   *Olmsted* had also made an assignment to a trustee of certain other real estate and his personal property, for the benefit of all his creditors.   Those two notes were presented to the commissioners under that assignment, and the claims were allowed.   The defendant, then, purchased of *Olmsted* his equity of redemption in the

lands mortgaged for the security of those notes, and thereby became the owner of those lands.

He subsequently sold them, and from the avails realized enough, with the dividends received from the trustee, to pay those two notes, the amount paid *Olmsted* for the equity of redemption, and all expenses attending the transaction of the business. All this was done before the assignment to the parties in this suit, with the exception of the receipt of the dividends under the general assignment. At what time they were received, does not appear from the report.

The question then arises, whether after the defendant had obtained from *Olmsted* a release of the equity of redemption, had sold the lands mortgaged, and realized enough from such sale, to pay the *Sage* and *Evelyn Pitkin* notes, he continued to have any valid claim against *Olmsted* on account of those notes. So long as he continued to hold those notes, secured only by a mortgage upon the debtor's real estate, he was a creditor of the mortgagor. But after he had taken the pledge, sold it, and received the avails, were not the notes satisfied? Had he any debt against *Olmsted*, which he could enforce, either in law or equity? We think not. He might perhaps have applied the moneys received from the sale of the lands in payment of his own debt, leaving a balance due on account of those two notes. But the result would be precisely the same. He had undoubtedly a right to charge against *Olmsted* the three notes, his own, and the two assigned to him; but we think he is bound also to credit the avails received from the sale of the lands, especially as they were received before the assignment to the plaintiffs and defendant.

But further, if we look at the assignment of those two notes, we shall find, that the object of the parties was, to enable the defendant to collect the dividends upon them from the trustee under the general assignment. But if it were otherwise, we do not see upon what principle a debt secured by a pledge, can be subsisting, when the creditor has obtained full satisfaction from the pledge.

It has been said, that equity will sometimes recognize a debt, that has been satisfied at law. This is true, where justice requires that it should be done. Thus, where the first mortgagee took a release of the equity of redemption from the mortgagor, and gave up to him his note; it was held, that

a second mortgagee should not take the land, without paying to the first mortgagee the amount of the note. For although at law the debt was satisfied, yet a court of equity would look at the *substance* rather than the *form* of the transaction, and see that justice was done to the parties. *Baldwin* v. *Norton*, 2 *Conn. R.* 161.

But where is the defendant's equity in the present case? Upon what principle of justice can he claim to receive a share of the fund in question, on account of the *Sage* and *Evelyn Pitkin* notes, when the report clearly shows, that those notes have been paid and satisfied out of the property mortgaged for their security?

It is true, *Olmsted*, when he made the assignment to these parties, had a right to prescribe in what manner the proceeds should be divided. He might have said, that the defendant's share should be in proportion to the amount of those two notes and his own, whether any portion of that amount had been paid or not. And the parties, by accepting the assignment upon those terms, would be bound to make the division accordingly.

But, in our opinion, he has not said that. He has directed the division to be made according to the respective *claims* of these parties, as then existing. The committee has found, that the defendant had a claim on account of his own note, about which there is no controversy, and in our opinion has not found such facts as will justify us in holding that he had any just or equitable claim on account of the notes assigned to him.

Such was the conclusion drawn by the court below; and a majority of this court think the inference correct; and consequently, that there is no error in the decree of the superior court.

In this opinion STORRS and HINMAN, Js. concurred.

WILLIAMS, Ch. J. and CHURCH, J. dissented; but the reasons of their opinion have not been reduced to writing.

Judgment affirmed.